UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TARA M.,

                 Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

CASE NO. C18-5226 JLR-BAT

**REPORT AND RECOMMENDATION**

Plaintiff appeals the ALJ's decision finding her not disabled. The ALJ found Plaintiff's status-post fracture of bones, disorder of the muscle ligament and fascia, and anxiety disorder are severe impairments; Plaintiff has the residual functional capacity (RFC) to stand and/or walk no more than two hours per day with additional exertional limitations, is limited to simple, routine tasks rated at SVP1-2, and can have no public contact but may have phone contact with the public; Plaintiff cannot perform past relevant work but is not disabled because she can perform other work in the national economy. Tr. 20, 25, 29, 30.

Plaintiff contends the ALJ erred by: (1) misevaluating the opinions of examining doctors Joanne Brilhart, Psy.D., Alysa[1] Ruddell, Ph.D., and Peter Weiss, Ph.D., (2) omitting from the RFC limitations recommended by state agency doctors to whose opinions the ALJ had given

---

[1] Plaintiff's brief incorrectly identifies Dr. Ruddell's first name as Shanon. Dkt. 10 at 6.

REPORT AND RECOMMENDATION - 1

1  "great weight," and (3) failing to support the step five findings with substantial evidence.

2  Plaintiff seeks a remand for an award of benefits. Dkt. 10 at 1.

3     As discussed below, the Court recommends the case be **REVERSED** and **REMANDED**

4  for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## DISCUSSION

### A.    Examining Doctors' Opinions

Plaintiff contends that the ALJ misevaluated the opinions of each of the examining doctors who evaluated her psychological impairments: consultative examiner Dr. Brillhart and Washington Department of Social and Health Services (DSHS) examiners Dr. Ruddell and Dr. Weiss. The ALJ must provide specific and legitimate reasons, supported by substantial evidence, to reject a contradicted medical opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

### *1.     Dr. Brilhart*

Doctor Brilhart conducted a consultative examination of Plaintiff in July, 2015. She diagnosed posttraumatic stress disorder. Dr. Brilhart found after a mental status examination that although Plaintiff had a clear ability to reason and understand and had some adaptation skills, Plaintiff's recent memory, concentration and persistence were moderately impaired. Tr. 622. Plaintiff's ability to interact with co-workers and the public, to maintain regular attendance, to complete a normal work day or week, and to deal with typical stresses in the work place (particularly around men) were all markedly impaired. *Id*.

REPORT AND RECOMMENDATION - 2

The ALJ gave "partial weight" to Dr. Brilhart's opinions, because (1) Plaintiff demonstrated good interactive skills with the examiner and ascertained abstract concepts to proverbs; and (2) there were discrepancies between "[Plaintiff's] allegations and her reported activities in the record." Tr. 24. These reasons for discounting Dr. Brilhart's opinions are not supported by substantial evidence.

First, the ALJ relied upon two isolated positive findings during Dr. Brilhart's mental status exam—that Plaintiff was cooperative and was able to engage in abstract thinking. Tr. 620. But the mental status exam also revealed other difficulties: memory tests during the exam revealed some difficulty with recent memory and Plaintiff was unable to perform or performed inadequately on tests of concentration, including serial sevens and serial threes. Tr. 620. In addition, although the ALJ concluded that Plaintiff "interacted well" with her female examiner, he failed to note Dr. Brilhart's observations that Plaintiff was "fearful of men," was "sad and scared" and "tearful at times" during the examination, was uncomfortable in places like the evaluation room with no escape, and feels shaky when she has to do something like attend the evaluation. Tr. 617-18. *See Ghanim v. Colvin* 763 F.3d 1154, 1164 (9th Cir. 2014) (ALJ erred in "cherry-picking" positive characterizations from doctor's records instead of considering their entire context). Finally, neither of the isolated positive findings undermines Dr. Brilhart's opinions; rather, they support her opinion that Plaintiff has "a clear ability to reason and understand" and has "some adaptation skills," but do not contradict her opinions that Plaintiff is impaired in her ability to concentrate, to interact with co-workers and the public, to maintain regular attendance and complete a normal work day or week, and to deal with workplace stressors (especially when men are involved). Tr. 622.

REPORT AND RECOMMENDATION - 3

1         The ALJ's finding that "there were discrepancies between [Plaintiff's] allegations and her
2    activities in the record" likewise is neither specific nor supported by substantial evidence.  First,
3    the reasons are not specific, because the ALJ does not identify any of the "discrepancies";
4    instead, the ALJ cites to an equally conclusory statement by the state agency reviewer.  Tr. 24,
5    citing Tr. 92.  *Orn*, 495 F.3d at 632 (ALJ must do more than offer his conclusions).  Second,
6    even if the Court were to search the remainder of the ALJ's decision for the unspecified
7    discrepancies, those that the ALJ offers elsewhere have no bearing on Dr. Brilhart's opinions.
8    The ALJ noted while discussing the state agency doctors' opinions that Plaintiff "stopped work
9    due to business not medical reasons, hik[ed], sew[ed] and provide[d] care for her young
10   grandchild."  Tr. 28.  None of these is inconsistent with a mental impairment markedly limiting
11   Plaintiff's social interactions or her ability to maintain regular work hours.  The ALJ
12   mischaracterizes Plaintiff's statements of her reasons for leaving work:  each time her reasons
13   are discussed in the record, Plaintiff states that, in addition to lack of work, she was also having
14   issues with pain in her feet and with her divorce.  Tr. 58, 619, 652.  Notably, Plaintiff stopped
15   working in 2010, several years before the September, 2014 domestic violence assault and
16   ongoing threats to which her therapist and each of the examiners attribute her psychological
17   symptoms, so it is not surprising that she does not claim she left work due to those issues.  Tr.
18   618, 340.  The record's single reference to a hike also pre-dates this event. Tr. 359.  The ALJ
19   provides no explanation why Plaintiff's sewing and caring for her grandchild (both done in her
20   home) are inconsistent with her anxiety or PTSD symptoms.
21        The ALJ has accordingly not provided specific and legitimate reasons supported by
22   substantial evidence for rejecting the opinions of consultative examiner Dr. Brilhart.
23

REPORT AND RECOMMENDATION - 4

### *2.     Dr. Ruddell*

Dr. Ruddell performed an examination of Plaintiff for DSHS in January, 2016, and diagnosed anxiety disorder. Tr. 653. Dr. Ruddell found severe impairment of Plaintiff's ability to learn new tasks, and marked impairment in her ability to follow simple and detailed instructions, to adapt to changes in a work setting, to communicate and perform in a work setting, to maintain appropriate behavior in a work setting, to complete a normal work day and week, and to plan and set goals. Tr. 654. Overall, Dr. Ruddell opined that Plaintiff was markedly impaired. *Id*.

The ALJ gave "little weight" to Dr. Ruddell's opinion. The ALJ found that "claimant reported living by herself, yet she said that she had a caretaker who did most of her housework," Tr. 28. Even if this had any relevance to the validity of Dr. Ruddell's opinions, it is factually erroneous. Plaintiff told Dr. Ruddell in January, 2016 that she lived alone; she testified (and the ALJ, elsewhere in his decision, acknowledges) that she began having a caregiver for her household chores in October of that year—nine months after her examination by Dr. Ruddell. Tr. 25, 54. There is thus no discrepancy between Plaintiff's report to Dr. Ruddell and her later testimony; the ALJ erred in his apparent conclusion that such a discrepancy undermined Dr. Ruddell's opinions.

However, this error is harmless, because the ALJ provided additional reasons for rejecting Dr. Ruddell's opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). As the ALJ found, Dr. Ruddell noted Plaintiff was "irritable" and had a headache, and the interview was "difficult." Tr. 28, 655. These are factors that could have skewed the findings of the examination, and are specific and legitimate reasons to discount an opinion that conflicts with other medical evidence in the record. While the record could also

support a different interpretation, an ALJ's decision must be upheld if it is supported by substantial evidence. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court accordingly affirms the ALJ's evaluation of Dr. Ruddell's opinions.

### 3. *Dr. Weiss*

Dr. Weiss examined Plaintiff for DSHS in January, 2017 and diagnosed posttraumatic stress disorder. Tr. 657. Upon a mental status examination, Dr. Weiss found plaintiff's concentration to be outside normal limits. Tr. 660. Dr. Weiss found severe impairments of Plaintiff's ability to maintain a schedule, punctuality and regular attendance, as well as her ability to complete a normal work day and week without interruptions from her symptoms. Tr. 658. He found that Plaintiff was moderately impaired in her abilities to follow detailed instructions, to learn new tasks, to adapt to changes, to communicate and perform in a work setting, to maintain appropriate behavior in a work setting, and to plan and set goals. *Id*. However, Dr. Weiss found mild or no impairment of Plaintiff's ability to follow simple instructions, to perform routine tasks, to make simple work-related decisions, to be aware of normal hazards or to ask simple questions. Overall, Dr. Weiss rated Plaintiff as markedly impaired. *Id*.

The ALJ gave great weight to Dr. Weiss's opinion that Plaintiff "had no limits on her ability to understand remember, and persist in tasks by following very short and simple instructions." Tr. 28, 658. However, he failed to discuss or to account for the other limitations assessed by Dr. Weiss: the RFC contains no discussion of Plaintiff's severe impairment in maintaining a schedule or completing normal work days or work weeks as described by Dr. Weiss. Tr. 25, 658. The Commissioner argues that the Court should construe the ALJ's failure as an intent to reject these opinions, *sub silentio*. Dkt. 14 at 6. But if the ALJ was rejecting part

REPORT AND RECOMMENDATION - 6

of Dr. Weiss's opinions, he was required to provide specific and legitimate reasons for doing so. The ALJ gave none and accordingly erred. *Lester*, 81 F.3d at 830-31.

This error was not harmless. The VE testified that a person who was absent more than two times a month or off task more than 20% of the time would not be employable. Tr. 68. It therefore cannot be said that the ALJ's failure to account for Plaintiff's limitations in maintaining a regular schedule and completing a regular work day or work week was "inconsequential to the ultimate nondisability determination." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). [2]

**B.     Failure to Incorporate State Agency Doctors' Recommended Limitations into RFC**

The ALJ gave "great weight" to the opinions of two state agency psychological reviewers (Eugene Kester, M.D. and Dan Donahue, Ph.D.) who found moderate limitations of Plaintiff's concentration and moderate and marked limitations, respectively, of her ability to interact with the general public. Tr. 28, 81, 96. Both opined Plaintiff "would do best limited to superficial [interaction] with general public but can work one-to-one with others as needed." Tr. 82, 97. Plaintiff argues that the ALJ's RFC, which permits telephone contact with the general public, fails to account for these opinions.

The Court agrees with Plaintiff. The state agency doctors did not provide restrictions to their limitation on contact with the public to in-person contact; the ALJ's unexplained finding Plaintiff could have certain types of public contact cannot be squared with the limitation assessed by the state agency doctors. This error was not harmless. Upon questioning by Plaintiff's

---

[2] The Commissioner argues that any error was harmless due to an asserted conflict between Dr. Weiss' findings that Plaintiff could perform routine tasks and his findings of severe impairments. Dkt. 14 at 12-13. There is no such conflict: the positive findings relate to Plaintiff's intellectual ability to understand, learn or perform simple tasks, while the limitations pertain to her emotional ability to actually get to work and remain functional in that environment.

REPORT AND RECOMMENDATION - 7

1 counsel, the Vocational Expert (VE) testified that if Plaintiff were limited to only occasional
2 contact with the public and with co-workers, she could not perform the jobs he had described in
3 his testimony. Tr. 68. In addition, one of the jobs the VE identified, telephone quotation clerk,
4 necessarily involves interaction with the general public by telephone. Dictionary of
5 Occupational Titles (DOT) 237.367-046.

6 **C.      Step Five Findings**

7 The ALJ found, based upon the testimony of VE Paul Morrison, that Plaintiff could
8 perform three jobs available in the national economy: telephone quotation clerk, addresser and
9 wafer breaker. Tr. 30-31.

10 Plaintiff argues the ALJ erroneously found no conflict between the DOT and the VE's
11 testimony that Plaintiff could perform the telephone quotation clerk job. Dkt. 10 at 10. Plaintiff
12 notes the job is described in the DOT as requiring a reasoning level of 3, whereas Plaintiff's RFC
13 was limited to simple routine tasks rated at SVP 1-2. DOT 237.367-046; Tr. 25. *See Zavalin v.*
14 *Colvin*, 778 F.3d 842, 846-48 (9th Cir. 2015) (reasoning level 3 work is in inherent conflict with
15 an RFC restriction to simple, repetitive tasks, and the ALJ was required to ask the VE to explain
16 the conflict). The Commissioner concedes that "the ALJ made a mistake" in failing to reconcile
17 the inconsistency, but argues the error was harmless because the VE identified two additional
18 jobs Plaintiff could perform. Dkt. 14 at 8.

19 Plaintiff argues the two remaining jobs have insufficient availability to meet the step five
20 requirement that work exist in significant numbers in the national economy. *See* 20 C.F.R. §
21 416.966. The VE testified that 6,600 addresser jobs and 657 wafer breaker jobs exist
22 nationally—a total of 7,257 jobs. Tr. 68. There was no testimony as to the number of jobs
23 available regionally. The Ninth Circuit has not set a bright-line rule defining a minimum number

REPORT AND RECOMMENDATION - 8

of jobs that constitutes a "significant number" for purposes of step five findings. *See Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). However, in *Beltran* the court found that 1,680 national jobs was not a sufficiently significant number to support the ALJ's finding that plaintiff was not disabled. 700 F.3d at 389-90. Similarly, in *Lemuaga v. Berryhill*, 686 Fed.Appx. 420, 422 (9th Cir. 2017), the court noted that "this court has never found [12,600 jobs nationally] to be significant." The Commissioner cites a case from this District—decided before both *Beltran* and *Lemuaga*—that finds 9,000 jobs to be "significant." Dkt. 14 at 9, citing *Hoffman v. Astrue*, 09-CV-5252-RJB, 2010 WL 1138341 (W.D. Wash. March 19, 2010). But the number of jobs at issue here is below that number, closer to the 1,680 found to be insufficient in *Beltran* and well below the 12,600 the Ninth Circuit deemed insignificant in *Lemuaga*. The ALJ's error in failing to resolve the conflict between the VE's testimony and the DOT with respect to the telephone quotation clerk job was therefore not harmless. *Randozzo v. Berryhill*, 725 Fed. Appx. 446, 448 (9th Cir. 2017) (error in failing to resolve conflict with DOT regarding one job was not harmless when remaining job identified by VE had only 10,000 jobs nationally).

**D.      Scope of Remand**

Plaintiff contends that the appropriate remedy is to remand for benefits. Dkt. 10 at 11. The Commissioner argues that if error is found, the Court should remand for further proceedings. Dkt. 14 at 10.

The decision whether to remand for additional proceedings or to award benefits is within the Court's discretion. 42 U.S.C. § 405(g); *Harman v. Apfel*, 211 F.3d 1172, 1177-78 (9th Cir. 2000). A Court should remand for an award of benefits only in the rare case. *See Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). The Ninth Circuit applies a three-part test, permitting remand for benefits where:

REPORT AND RECOMMENDATION - 9

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Courts have flexibility in applying this rule; even where the three elements are satisfied, the court may instead remand for further proceedings where the record as a whole "creates serious doubt that a claimant is, in fact, disabled." *Id*.

The Court finds the record is not fully developed and further proceedings would be useful. The ALJ gave great weight to a part of Dr. Weiss' opinion but erred in failing to address the rest of the limitations he assessed. On remand, the ALJ should address them. The ALJ shall also address the scope of the state agency doctors' opinions regarding Plaintiff's ability to interact with the public, including further development of the record on this issue. As these are factual determinations this Court cannot make on review, it is appropriate that the case be remanded for further proceedings under sentence four of 42 U.S.C. § 405(g).

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reassess the opinions of Drs. Weiss and Brilhart, and the state agency doctors. The ALJ shall develop the record and re-determine Plaintiff's RFC as needed, and proceed to step five as appropriate.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **November 15, 2018.** If no objections are filed, the Clerk shall note the matter for November 16, 2018 as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being

served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 1st day of November, 2018.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 11